# Wytheville.

## Cox's Ex'or v. Crockett & Co.

### August 1, 1895.

1. ASSIGNMENT—*Judgment—Estoppel—Res Judicata.*—Where the assignment of a chose in action is absolute in its terms, and judgment has been obtained thereon in the name of the assignor for the benefit of the assignee, which judgment has subsequently been declared void in a suit brought by the assignee to enforce the collection of said judgment out of the lands of the judgment debtor, the assignor of the debt is bound by the decree against his assignee, and is estopped from setting up said judgment as a *lien* on the lands of his judgment debtor, even though said assignment was merely a collateral security for a debt, or intended to carry only a partial interest. The assignor and assignee are at least privies in the transaction, and the question of the lien of said judgment is *res judicata.*

Appeal from a decree of the Circuit Court of Wythe county, pronounced at its September term, 1891, in a suit in chancery, wherein the appellants were the complainants, and the appellees and others were the defendants.          *Affirmed.*

The opinion states the case.

*J. W. Caldwell*, *Blair & Blair*, and *Chapman & Gillespie*, for the appellants.

*Walker & Caldwell*, for the appellees.

CARDWELL, J., delivered the opinion of the court.

In May, 1861, Elias Groseclose sold to William and A. G.

Cox a tract of land, situate in Wythe county, and on the 6th of August, 1866, Groseclose conveyed the land to the Coxes, retaining a lien for balance of purchase money.

In 1859 one William Gibboney obtained judgment against Elias Groseclose for $1,073, with interest from July 9, 1859, and costs, which was duly docketed in the clerk's office of Wythe county. In 1870 William Gibboney filed his bill in the Circuit Court of Wythe county to enforce his judgment lien on the land bought by the Coxes from Groseclose, and which we will hereafter speak of as the Groseclose land, and to this suit he makes Groseclose and the Coxes parties defendant. In 1872, while Gibboney's suit was still pending, the Coxes sold the Groseclose land to T. G. McConnell for $9,300, and conveyed the same to McConnell by deed, with covenant of general warranty, and retaining a lien for the purchase money, McConnell executing his three notes for the purchase money in equal sums for $3,100, with interest thereon from October 1, 1871, till paid, and payable respectively on the 1st day of October, 1872, 1873, and 1874. The Coxes thereupon assigned one of these notes to William Gibboney in payment of his judgment lien against Groseclose, and assigned the last two notes, due October, 1873, and October, 1874, to John W. Taylor's executors, and a suit was instituted in the name of William and A. G. Cox, for the benefit of Taylor's executors, on the note maturing October 1, 1873, against McConnell, and obtained judgment thereon.

Elias Groseclose, Cox's vendor, then assigned the balance of the purchase money due him from the Coxes to one Adam Groseclose, and in January, 1874, Adam Groseclose filed his bill seeking to enforce the vendor's lien reserved on the face of the deed from Elias Groseclose to the Coxes for the balance due from them to Elias Groseclose. In September, 1874, the court decreed that any balance due from the Coxes to Groseclose constituted a vendor's lien on the Groseclose land, and

directed an account to ascertain the balance of the purchase money due from the Coxes to Adam Groseclose, as assignee of Elias Groseclose, and the balance was reported by the commissioner to be $2,095.50, with interest, and the report was confirmed, and the Groseclose land decreed to be sold to pay balance of purchase money due from the Coxes. The land was sold under the decree for $4,985.

At the January rules, 1875, Taylor's executors filed a bill to enforce the lien of the second and third purchase-money notes, executed by McConnell to the Coxes for the Groseclose land, on one of which judgment had been obtained, making the Coxes, Groseclose, and McConnell parties defendant. In March, 1875, there was a decree for sale, in this case, of the Groseclose land to satisfy the notes held by Taylor's executors, on one of which, as we have seen, judgment had been obtained.

At July rules, 1875, D. P. Graham, surviving partner of D. Graham & Son, filed a bill to enforce the lien of a judgment in his favor against the Coxes for some $2,000 or more, obtained in October, 1867, and which was a lien on the Groseclose land, and second in priority only to the Gibboney judgment against Groseclose, and to the Groseclose vendor's lien retained in the deed from the Coxes to McConnell. To this bill the Coxes and McConnell are made defendants.

At the September term, 1875, the suits of *Graham* v. *Cox* and *Taylor's Ex'ors* v. *McConnell* were heard together, and a decree for an account was entered, and the causes referred to a commissioner; and in February, 1876, the commissioner returned his report, showing that the lien on the Groseclose land, which had priority over the purchase money due from McConnell to the Coxes, amounted to about $15,000.

At the March term, 1876, the four causes, *Gibboney* v. *Cox*, *Taylor* v. *McConnell*, *Adam Groseclose* v. *Cox*, and *Graham* v. *McConnell*, were heard together, and the commissioner's report, before referred to, confirmed, and the sale of the land

previously made was set aside, and a decree for re-sale made. At the re-sale D. Graham became the purchaser of the Groseclose land at $4,000, and at the September term, 1877, the sale to Graham was confirmed.

At the November term of the court, 1879, Commissioner Bolling, pursuant to a decree previously entered, reported that after paying the liens for purchase money due from the Coxes to Groseclose, and costs and commissions, out of the $4,000 purchase money due from Graham, there was left only $418.55 to be paid on the judgments against Cox, which were prior to the McConnell purchase, and which would leave over $7,000 of prior liens against Cox unpaid ; and at the December term, 1879, this report of Commissioner Bolling was confirmed, followed by a decree at a later term directing a deed to be made to Graham, the purchaser. In 1882 all the above-mentioned causes were stricken from the docket, and no appeal has ever been taken in any of them. It thus appears from the records of these suits, made exhibits in the cause now being considered, that the land sold by the Coxes to McConnell was covered with prior liens largely beyond the amount of the purchase money McConnell was to pay, and that McConnell was wholly and entirely deprived of the Groseclose land by reason of these prior liens.

In 1876 there was pending in the Circuit Court of Washington county a chancery suit instituted by the Lynchburg Banking and Insurance Company, a judgment creditor of said T. G. McConnell, to subject the real estate of McConnell, situated in Washington county, to the payment of the plaintiff's judgment; and in January, 1878, an account of liens was ordered in that suit, and the judgment of the executors of Taylor, assignees of the Coxes, against McConnell for $3,100.00, with interest and costs, was filed before the commissioner by Taylor's executors, and was reported as lien No. 11. This report was excepted to by junior lien creditors

of McConnell, because the judgment of Taylor's executors, assignees of the Coxes, was reported as a lien against McConnell, and on the ground that the land sold by the Coxes (that is, the Groseclose land) to McConnell was wholly lost to him by reason of prior liens against the Coxes. On October 4, 1879, a commissioner reported that the judgment of Taylor's executors, assignees of the Coxes, was " obtained upon purchase-money notes, executed by McConnell to the Coxes for the Groseclose land ; that after purchase, and before the notes were paid, a suit was brought in Wythe county to enforce the lien for purchase money due from Coxes' intestate for said land, and as the result of said suit the land was taken from McConnell entirely " ; the suit referred to being the suit of Adam Groseclose, assignee of Elias Groseclose, against the Coxes, hereinbefore mentioned. To this report, disallowing the judgment of Taylor's executors, assignees of the Coxes, Taylor's executors excepted, and on the 20th of January, 1880, the court sustained the report of the commissioner disallowing the judgment, by reason of the fact that the subject which was the consideration of the judgment had been lost to McConnell, and overruled the exception of Taylor's executors.

No appeal was ever taken from this decree of the Circuit Court of Washington county; but Taylor's executors subsequently filed their bill in the Circuit Court of McDowell county, W. Va., against J. O. Cox and William Cox, defendants, and succeeded in collecting the amount due them from the Coxes, and in this bill of complaint, then filed, it appears for the first time that Taylor's executors claimed to hold the notes assigned to them by William and A. G. Cox against T. G. McConnell only as collateral security. It turns out that, when the judgment was obtained by William and A. G. Cox for the benefit of Taylor's executors against T. G. McConnell for the sum of $3,100.00, with interest, in May, 1874, as we have before stated, the judgment became a lien upon a

tract of land known as the Painter tract, situated in the
county of Wythe, and which land was afterwards conveyed
by McConnell and wife to one John G. Kreger, in trust to
secure an alleged indebtedness to one David G. Thomas, and
subsequently conveyed by deed from Kreger, trustee, to David
G. Thomas, then by deed from Thomas and wife, on April
2, 1883, to the firm of Crockett & Co., appellees here.

In 1888 William Cox filed his bill in the Circuit Court of
Wythe county, setting forth that, by reason of the fact that
John W. Taylor's executors had been satisfied as to their
claim out of the estate of J. O. Cox in West Virginia, he,
(William Cox) was entitled to the benefit of the judgment
obtained on the purchase-money note of T. G. McConnell for
the sum of $3,100.00, a part of the purchase money for the
Groseclose land, and sought to subject the Painter tract of
land, then in possession and ownership of Crockett & Co.,
to the payment of the judgment; whereupon Crockett & Co.
demurred to and answered the bill filed by William Cox,
setting up by way of defence all of the facts relative to the
loss of the Groseclose land by McConnell, the purchase of the
Painter land by Crockett & Co., and the proceedings had in
the Circuit Court of Washington county in the suit of the
*Lynchburg Banking and Insurance Company* v. *T. G. Mc-
Connell*, and claiming that the matters set up in the bill of
the complainant, William Cox, were *res adjudicata*, and that
therefore the complainant could not enforce the judgment he
claimed against the defendants, Crockett & Co., nor subject
the Painter land to the payment thereof.

After the filing of this bill by William Cox, he departed
this life, and the cause was revived in the name of his per-
sonal representatives, and at the final hearing of the cause
" upon the bill, the exhibits filed therewith, the answer of
Crockett & Co., with general replication thereto, the de-
murrer, joinder therein, the record in the cases of *Groseclose*

v. *W. and A. G. Cox, Graham* v. *Cox and McConnell, Taytor's Ex'ors* v. *McConnell, Gibboney* v. *Cox et als.*, and *Lynchburg Banking and Insurance Co.* v. *McConnell*, and the orders before entered," the Circuit Court of Wythe county overruled the demurrer and decreed that complainants' bill be dismissed on the merits, with costs to the defendant. From this decree an appeal was allowed to this court.

The question presented is, whether appellants are estopped from asserting, against the Painter tract of land, now owned by the appellees, the judgment obtained for the benefit of J. W. Taylor's executors against T. G. McConnell.

We are of opinion that the rule *res adjudicata* applies to this case. In the case of *Clarksons* v. *Doddridge et al.*, 14 Gratt. 42, Judge Moncure, in delivering the opinion of the court, says, that when the right to receive the money due on a claim is in the assignee, he has the right to bring an action at law in the name of his assignor, and he will be regarded, even by a court of law, as the substantial plaintiff in the action. The court will protect his rights, and will not permit the nominal plaintiff to receive the money, nor· to relieve the debt, nor to dismiss the action. By analogy, therefore, Taylor's executors stood in the shoes of William and A. G. Cox as to the judgment on the note against T. G. McConnell, and were clothed with full power and authority to assert this judgment against T. G. McConnell in the suit of the *Lynchburg Banking and Insurance Co.* v. *T. G. McConnell*, pending in the Circuit Court of Washington county, and the decree of the court in that cause, declaring that the said judgment was a nullity, by reason of the fact that the consideration for which it was originally obtained had failed, was as binding upon William and A. G. Cox as it was upon the executors of John W. Taylor. At that time T. G. McConnell had no reason to suppose that the Coxes had any interest in the judgment. Indeed, they had none, and if appellants here have

any interest, it was acquired after the decree of the Circuit Court of Washington county declaring it a nullity. If this were not so, the original assignment of the note upon which the judgment was obtained carried with it to Taylor's executors a mere right of action, and if appellants could acquire, after the decree of the Circuit Court of Washington county, an interest in the judgment, upon which they might sue and subject the property of McConnell, or his vendee, to the payment thereof, they might also sell their right to another ; and if he should try this action on its merits and fail to recover, upon the same principle, the right might be assigned to still another, and so on, and there would be no end to litigation. The doctrine of estoppel is founded upon principles of law which are intended to repress litigation, and to prevent a multiplicity of suits. *Adams* v. *Barnes,* 17 Mass. 368 ; Freeman on Judgments, sec. 327.

Appellants acquired title to the judgment asserted in this cause, if any title they have, after the decree of the Circuit Court of Washington county, and they are to be treated as privies to that decree. Freeman on Judgments, *supra,* sec. 162. It may be claimed by appellants that when the Coxes assigned the note to Taylor's executors, upon which the judgment asserted in this cause was obtained, there was a contemporaneous and collateral agreement which rendered the assignment conditional or partial ; but this will not avail, even if it be so, as the assignment appears to have been absolute in its terms.

Where the assignment, whether written or verbal, of anything in action is absolute in its terms, so that by virtue thereof the entire apparent interest vests in the assignee any contemporaneous, collateral agreement, by virtue of which he is to receive a part only of the proceeds, and is to account to the assignor, or other person, for the residue, or even is to thus account for the whole proceeds, or by virtue

of which the absolute transfer is made conditional upon the fact of recovery, or by which his title is in any other similar manner partial or conditional, does not render him any the less the real party in interest. The debtor is completely protected by the assignment, and cannot be exposed to a second action by any of the parties, either the assignor or other. Pomeroy's Remedies and Remedial Rights, sec. 132 and notes.

For the foregoing reasons, we are of opinion that the decree of the Circuit Court of Wythe county complained of is clearly right, and it is affirmed.

*Affirmed.*